John B. Tenney, J.
Stephanie Carey was hired by the Onondaga County Human Bights Commission as a contract compliance officer of City-County Affirmative Action on July 5, 1971. In September, she received a notice of a civil service test apparently for her position. She orally objected to the requirements, but took the test, placing ninth on the list. She had also written to the personnel department regarding the examination, but received no response. She was discharged on March 23, 1972, since three people above her name on the civil service list expressed a willingness to fill the three vacancies.
The motion before the court is to restrain the appointment from the approved list until there has been a determination of her complaint now pending before the State Division of Human Bights. She is alleging that she has been deprived of equal *128 employment rights because she is a white female. In substance, she argues that her former employer is making efforts for “ other Commission employees who are black or male or both ” to keep their jobs which he will not do for her. Further, she argues that he has failed to act on her complaints regarding the relevancy of the civil service test only because she is a white female.
The positions now vacant or to be filled from the eligibility list are entitled ‘ ‘ field representative ’ ’. Petitioner is ninth on that list. The notice indicated that the “ resulting eligible list will be used to fill all present and future vacancies ”. At the time of the exam and up to her termination, petitioner was a provisional employee. (Civil Service Law, § 65.) The position she held is one of the vacancies which must be filled from the list.
The supporting affidavits indicate a canvass of the list has been held and appointments must be made from those eligible consistent with section 61 of the Civil Service Law. Stephanie Carey would not be eligible for appointment because of her 'position on the list.
First, she argues that because the examination was so unrelated tó the position to be filled that the list should be annulled. This is a question for the court to determine and is not a proper subject for examination by the Human Rights Commission unless there is an allegation that something about the test was discriminatory. (Executive Law, § 297, subd. 1.) Absent such an allegation, petitioner may seek a review of the examination through the courts. (Matter of Pollack v. Conway, 276 App. Div. 435, app. den. 301 N. Y. 816.) Such a review to be successful would require a showing that the examination scope * ‘ was arbitrary arid capricious * * * [and] no reasonable man would have regarded this examination as appropriate ” (276 App. Div., supra, p. 437; see Story v. Craig, 231 N. Y. 33; People ex rel. Schau v. McWilliams, 185 N. Y. 92; Matter of Kaplan v. O’Connell, 281 App. Div. 46, affd. 305 N. Y. 850).
Generally speaking, the scope of an examination is an administrative decision and is not subject to judicial review. (Matter of Gulotta v. Falk, 9 A D 2d 580.) Petitioner is not objecting to the questions which she could not know about in advance but rather the scope of the examination. She stated that she thought the proposed field to be covered and, apparently, the educational requirements were unwarranted by the job itself. This was information available to her before she took the test. Petitioner could have objected by appropriate petition to the Civil Service1 Commissioner. Whether she should be permitted to *129 object to the scope of the examination after she has taken it is not at issue. There is some authority that limits that right. (Matter of Davier v. Reavy, 179 Misc. 425.) As to objections to the actual questions, see Matter of Paroli v. Bolton (57 Misc 2d 952, 960).
The examination has been held, and the list established. No action by the Human Eights Commission can change the effect of the list and the duties it imposes upon her employer. He must appoint from the list. (Civil Service Law, § 61.) Neither the court nor the Human Eights Commission can compel him to appoint this petitioner, nor can this be accomplished by conciliation (Matter of Turel v. Delaney, 287 N. Y. 15; Matter of Cirino v. Walsh, 66 Misc 2d 450), since he is obligated to select from the three highest on the list. (Civil Service Law, § 61.)
Petitioner’s second argument which she has submitted to the Human Eights Commission concerns the attitude of her former supervisor towards her. Although this might be a proper subject for consideration by the Commissioner, it cannot affect the requirements of the Civil Service Law. The practice of department heads in “ screening ” individuals and even discouraging those high up on the list, has never been condoned by the courts. However, the Civil Service Law does not prohibit an employer from making a decision regarding which of the eligibles will be chosen. (Matter of Kaminsky v. Leary, 33 A D 2d 552; Matter of Chikofsky v. Thompson, 22 A D 2d 782.)
Therefore, until the list is vacated, petitioner is.not eligible for the position, since 7 out of the first 8 persons after 1 ‘ screening ” have expressed a willingness to accept and are available. Neither conciliation nor a hearing can change her status. Also, there is a very serious question whether probable cause exists to justify action under section 297 of the Executive Law. Denial of requests for limited job specifications and refusal to make special efforts to keep her job can hardly be classed as discriminatory actions consistent with the intent of the statute. Her allegation that such efforts are, in part, being done for others, even if assumed true, seems to be an exercise of reasonable discretion.
Since petitioner has not established that the respondent may act so as to render ineffectual an order of the Commissioner, an injunction is denied, and the temporary restraining order is vacated.