PEOPLE ex rel. LYNCH v. PIERCE et al., Board of Health of Village of Peekskill.

(Supreme Court, Appellate Division, Second Department. February 2, 1912.)

1. EVIDENCE (§ 387*)—PAROL EVIDENCE—VILLAGE RESOLUTION.
    Where, under section 20, Public Health Law (Laws 1893, c. 661), as amended by Laws 1903, c. 383, § 2, providing that the local health officers should be appointed by the state commissioner of health upon nomination of the local board of health, a village board "nominated," by written resolution, a person who was thereupon appointed, declarations of such members thereafter that they intended by that act to elect such

officer are not admissible in mandamus to compel them to elect a new official after the act of 1903 has been held unconstitutional, so far as it permitted the state commissioner to appoint, thereby vesting the power to appoint in the local board.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1703; Dec. Dig. § 387.*]

2. HEALTH (§ 7*)—OFFICERS—APPOINTMENT.

Under section 20, Public Health Law (Laws 1893, c. 661), as amended by Laws 1903, c. 383, § 2, which placed the right of appointment of local health officers in the hands of the state commissioner of health upon nomination by the local board, and Laws 1904, c. 484, § 2, which invested the state commissioner with the absolute power of appointment in case of his dissatisfaction with the nominee, a village board had power to do nothing but nominate, and its exercise of the power granted cannot be considered to have been an election after the appointment has been rendered invalid by the finding of the statute in question unconstitutional.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 6; Dec. Dig. § 7.*]

3. OFFICERS (§ 13*)—APPOINTMENT—ACT OF MAKING.

The appointment of a person to fill an office must be the discretionary act of an officer or board charged with the power of appointment, and, even though made on the recommendation or advice of others, it will not be regarded as ministerial.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 15; Dec. Dig. § 13.*]

4. MANDAMUS (§ 76*)—PROCEEDINGS OF HEALTH BOARD—APPOINTMENT OF OFFICER.

Where the appointment of a village health officer made by the state commissioner of health was rendered invalid by holding the statute authorizing it unconstitutional, and the power to appoint later lodged in the village board of health by Laws 1909, c. 165, mandamus may issue to require the appointment of an officer to fill the vacancy created by the decision.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 158–160; Dec. Dig. § 76.*]

Appeal from Special Term, Westchester County.

Mandamus by the People, on the relation of James E. Lynch, against Caleb E. Pierce and others, composing the Board of Health of the Village of Peekskill. From an order denying a motion for a peremptory writ, relator appeals. Reversed, and motion granted.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, BURR, and CARR, JJ.

William F. Bleakley, for appellant.
Leverett F. Crumb, for respondents.

JENKS, P. J. The relator moved at Special Term for a peremptory writ of mandamus to the persons composing the board of health of the village of Peekskill to appoint a health officer to fill a vacancy "caused by the decision of Towne v. Porter, 128 App. Div. 717 [113 N. Y. Supp. 758]." The Special Term found that on March 12, 1908, the said board of health passed this resolution:

"Resolved, pursuant to section 20 of the public health law as amended by chapter 383 of the Laws of 1903, that Eldorus De Motte Lyon, M. D., be

and he hereby is nominated by this board for the position of health officer of the village of Peekskill, for the term of four years, beginning April 1, 1908, and that the secretary be and he hereby is directed to forward said nomination for such appointment to Dr. Eugene H. Porter, state commissioner of health, on behalf of this board," and "that said board of health intended by said resolution to appoint the said Eldorus De Motte Lyon, health officer of the village of Peekskill for the term of four (4) years. That on or about the 1st day of April, 1908, the said Eldorus De Motte Lyon duly qualified as health officer of the village of Peekskill, and has continued as such down to the present time, and that he is now such health officer."

And it determined thereupon as a conclusion of law that:

"The effect of the passage of the said resolution by the board of health of the village of Peekskill was the appointment of the said Eldorus De Motte Lyon as health officer in and for the village of Peekskill for a term of four (4) years, and that the said term of office will not expire until four years from the 1st day of April, 1908, and that there is now no vacancy in said office," and "that the relator is not entitled to a peremptory writ of mandamus as prayed for in his notice of motion and petition."

Dr. Lyon was permitted to intervene and become a party. Section 20 of article 2 of chapter 661 of the Laws of 1893 provided for the appointment of a local health officer for one year by the village board of health. The said section was amended by chapter 383 of the Laws of 1903, providing that the state commissioner of health should appoint for each municipality except cities, on nomination of a local board of health, a competent physician to be health officer of the municipality for the term of four years. Chapter 484 of the Laws of 1904 invested the said state commissioner with the absolute power of appointment in event of his nonsatisfaction with the physician recommended by the local board. After the passage of the resolution in question and an appointment in accord therewith by the state commissioner, the decision in Towne v. Porter, 128 App. Div. 717, 113 N. Y. Supp. 758, was handed down that determined that the said chapter 383 of the Laws of 1903, amending the said section 20, was unconstitutional in so far as it vested power in the state commissioner to appoint and to pass upon the competency of municipal health officers. Chapter 165 of the Laws of 1909 provided that the local board of health should appoint the health officer. This act was passed on February 17, 1909. On April 10, 1909, the relator demanded that the local board appoint such an officer, without result. This motion followed.

[1] At the time of the passage of the resolution, the power of the local board as declared by the statutes was to nominate, while the power of appointment was expressly vested in the state commissioner. This statutory procedure was followed exactly by the local board, for its resolution "nominated" Dr. Lyon for such appointment, to the state commissioner. Two of the members of that local board who voted for the resolution now depose "that it was his intention and desire when he so voted to appoint said Lyon such health officer." But in the paragraph immediately preceding, each deposes that he "voted for the resolution * * * nominating" Dr. Lyon "for appointment of health officer." I have no doubt that each affiant desired the appointment of Dr. Lyon and intended to bring about his appointment

by nomination to the state commissioner. But are we to understand that these affiants intended to disregard the .statute and to *appoint* Dr. Lyon by that resolution, although they formally obeyed the statute and but "nominated" him to the state commissioner for the purpose (expressed in the resolution) of appointment by that officer? In other words, had they determined that the statute was unconstitutional and, although *formally* obeying it, had they made up their minds that by the passage of the resolution they would really appoint the person named therein? I cannot think that these affiants seek to make.a declaration in derogation of their official action as evidenced by this formal resolution. They do not pretend.that the resolution is not in accord with their action or does not set forth correctly what they did. I think that these affiants should not be heard as to their intent. The principle is expressed generally in Wigmore on Evidence, § 2471, where it is said:

"When a transaction has been even voluntarily embodied in a single document, no other utterance of intent or will on the same subject can be given legal effect. Hence such a declaration is excluded from consideration even in the process of interpretation, not because it would not for that purpose be useful, but because it would be improper for the other purpose. There being two conceivable purposes for which it could be used, the one proper, the latter improper, it is excluded because of the fear that the latter would dominate and that the temptation to abuse would be too strong."

[2] I think that the intention to be derived from this official act was but to nominate for appointment to the recognized appointive officer in accord with the prescribed scheme of the statute. The learned counsel for the respondents mainly relies upon People ex rel. Kresser v. Fitzsimmons, 68 N. Y. 514. In that case a mayor had the power of appointment of certain officers, but labored under the mistake that his appointments must be confirmed by the common council, and therefore submitted "the following nominations" for confirmation to the common council. The court, not without difficulty and with dissent, decided the mayor thereby appointed these persons to office. The reasoning of the court was that the mayor had intended to discharge, and had supposed he had discharged, his whole duty under the statute in reference to the *appointment;* that the communication might be read as if the mayor had stated that he had made the nominations, and he submitted them for *confirmation;* that the essential thing was the fact of the appointment, and, if the paper was signed for the purpose of making or evidencing the appointment, all the rest was formal. The court added:

"It cannot be denied that much can be said in opposition to the conclusion we have thus reached. But, in a case like this, where the mayor had the undoubted authority to make the appointments, and exercised that authority at the proper time, and the persons appointed had accepted their offices and entered upon the discharge of their duties, disregarding mere matters of form, the action of the mayor must be upheld, if it can be without violating any rule of law, and that it can be thus upheld we think has been sufficiently shown."

It may be entirely true that, if the law that cast the power of appointment in the state officer was unconstitutional, the power of appointment was actually in the local board at this time; but the point

of divergence between the case at·bar and Kresser's Case lies in the difference between the formal acts relied upon. That of the mayor in Kresser's Case was construed by the court to be an appointment. I again call attention to the language of the court referring to the communications:

"They may then be read as if the mayor had stated in them that he had made the nominations of the persons named, and that he submitted them for confirmation or approval."

But the resolution in this case cannot, I think, be so read. For it expressly declares that Dr. Lyon was *nominated* for *appointment* by the state commissioner. The mayor had the power of appointment and supposed he had the power of appointment subject to confirmation, and he intended an act of appointment. The board had the power of appointment (conceded for the proposition), but supposed it had the power of nomination for appointment by another, and but intended an act of nomination. In discussion of Kresser's Case, supra, in People ex rel. Babcock v. Murray, 70 N. Y. 521, the court say that the decision was reached "with considerable hesitation and not without great doubts." And thereafter say:

"It is nowhere intimated in the opinion that anything less than a formal paper writing, signed by the official with whom the power of appointment rests, showing clearly his intent to appoint the persons named, and his belief that such writing is that required by the statute, and his intention to make that the final act on his part in perfecting the appointment, will constitute an appointment conferring the office upon the appointees, and such was the paper signed by the mayor in that case, as interpreted and construed by this court."

The precise distinction between Kresser's Case and the case at bar is found in the sentence "showing clearly his intent to appoint the persons named."

[3] The choice of a person to fill an office must be, to cite the language of the Court of Appeals in People ex rel. Balcom v. Mosher, 163 N. Y. at page 40, 57 N. E. 90, 79 Am. St. Rep. 552, "the discretionary act of the officer or board clothed with the power of appointment; that while he or it may listen to the recommendation or advice of others, yet the selection must finally be his or its act, which has never been regarded or held to be ministerial." The dissent of Rapallo, J., in Kresser's Case, supra, which is recognized in Babcock's Case, supra, as of great force, indicates the importance of this distinction. That great judge said:

"The argument in its support is that, inasmuch as the mayor had power to appoint without asking the consent of the common council, his consulting them was a mere superfluity which did no harm. But the answer to this argument is that the mayor did not exercise his power, but submitted the question to the common council. It is by no means certain that if they had rejected his nominations, the nominees would, nevertheless, have been admitted to the office, or even that if the mayor had not supposed a confirmation necessary he would have made the nominations which he did. Both of these propositions must be assumed for the purpose of establishing that the nomination was equivalent to an appointment. When the Legislature has conferred this power upon the mayor, I think he must exercise it and give to the public the benefit of his free choice, and assume the entire responsibility of the selection, and that it is not a compliance with the law to submit the

matter to the decision of another body, and thus divide both the power and responsibility."

[4] I think that the mandamus should issue. This was the practice in Matter of Kelly v. Van Wyck, 35 Misc. Rep. 210, 71 N. Y. Supp. 814, which seems to be recognized without question. See People v. Dooley, 69 App. Div. at page 518, 75 N. Y. Supp. 350; s. c. 171 N. Y. 74, 63 N. E. 815.

The order must be reversed, without costs, and the motion must be granted. All concur.